No. 23,023.

THE STATE OF KANSAS, ex rel. WILLIAM H. BURNETT, as County Attorney of Reno County, *Plaintiff*, v. CHAS. H. STEWART, as County Clerk of Reno County, *Defendant*.

SYLLABUS BY THE COURT.

IMPROVEMENT OF COUNTRY ROAD—*Levy of Taxes Before Completion of Improvements.* Under the provisions of the road law it is not necessary that an improvement shall be completed before general county and township taxes can be levied to provide a fund to meet at maturity the first installment of the bonded debt created therefor, notwithstanding that local assessments upon the land specially benefited cannot be made until such completion.

Original proceeding in mandamus. Opinion filed July 19, 1920. Writ allowed.

*William H. Burnett,* county attorney, for the plaintiff.

*Walter F. Jones,* of Hutchinson, for the defendant.

The opinion of the court was delivered by

MASON, J.: The commissioners of Reno county on May 26, 1920, levied county and township taxes to meet the first payment of principal and interest due January 15, 1921, upon bonds issued to raise money for a road improvement. The county clerk declined to extend the levies upon the tax rolls on the ground that they were not authorized by law. This action is brought against him by the state, on the relation of the county attorney, to compel such extension. The case is submitted upon an agreed statement of facts.

The county clerk contends that no tax can be levied to provide a fund for the payment of the bonds until the improvement is completed, and the disposition of the case turns upon the soundness of that contention.

The State, *ex rel.*, v. Stewart.

· The first steps for the improvement of the road were taken in 1918, and were controlled by the law then in force. (Laws 1917, ch. 265.) After its amendment in the following year, the proceedings were governed by the new law. (Laws 1919, ch. 246, § 8; *Washburn v. Shawnee County*, 103 Kan. 169, 172 Pac. 997.) Under the act of 1917 no bonds were to be issued until the completion of the improvement. (§ 9.) The section of the present law relating to the issuance of the bonds and the levy of taxes reads as follows:

"That section 9 of chapter 265, Laws of Kansas of 1917, be amended to read as follows: Sec. 9. After the approved estimates have been filed with the county clerk and the cost to be assessed against the taxable property of the county and township has been approximately determined by deducting from the total estimated cost all donations, subscriptions, state aid or federal aid that have been· granted .or promised, the board of county commissioners may issue from time to time as required, bonds of the county, bearing not to exceed five per cent interest, payable within the time fixed in the petition for levying special assessments: *Provided,* The total amount of bonds issued previous to completion of the improvement shall not exceed the amount of the estimated cost to be assessed against the county and townships. Said bonds shall be issued in series and shall be payable in equal amounts each year as nearly as practicable, and shall be disposed of by the county board in the manner provided by law, and the proceeds thereof shall be deposited with the county treasurer in the special fund for the improvement. After completion of the improvement, the application of state and federal aid, the ascertainment of apportionments to be charged against the taxable property in the county and township and the amount assessed against the several tracts of land within the benefit district, the board of county commissioners shall issue bonds of the county in the same manner as above provided in this section and the proceeds thereof shall be used in paying the remaining outstanding warrants for the improvement. After any such bonds are issued the board of county commissioners shall make an annual levy upon all the taxable property of the county and upon the taxable property of the township and upon the lands within the benefit district according to the apportionment of cost fixed upon said lands in all cases in proportion to the respective liabilities, which tax shall be sufficient to pay the bonds falling due each year and the interest upon outstanding bonds; these bonds shall be in addition to any other bonds which the county may by law be authorized to issue: *Provided,* That the board may· in its discretion pay the county's proportion of the cost out of the general fund and road fund of the county if such funds are sufficient for that purpose after deducting all other proper charges against said funds, and after such payment no general county levy shall be made for payment of the bonds, or if any portion of the county's proportion of the cost is paid in such manner the county levy shall be reduced proportionately thereto:

Provided further, That the township board or boards of the township or townships affected by the benefit district may, in their discretion, deposit with the board of county commissioners sufficient funds to pay the township's proportion, or any part thereof, of the cost of the road out of the general funds or road funds of said township or townships, if such funds are sufficient for that purpose, and if any of the townships' proportion of the cost is paid in such manner, the township levy shall be reduced proportionately thereto." (Laws 1919, ch. 246, § 6.)

The act further provides that the cost of the improvement in excess of the aid received from the federal government and from other sources shall be distributed thus: Fifty per cent to the county, twenty-five per cent to the townships in which the benefit district is situated, divided according to its area in each township, and twenty-five per cent among the several tracts within the district according to the benefit received as determined by the county commissioners after the completion of the improvement (§ 5); and also that the petition shall designate "the number of annual assessments to be levied upon the lands in the benefit district" (§ 2), in this instance twenty.

It will be observed that the statute authorizes the issuance of one set of bonds upon the filing of the approved estimates, and another after the improvement is completed, and then provides for the levy of taxes for the payment of "any such bonds," obviously referring to those of both sets. The difficulty to which the defendant calls attention arises out of the fact that no levy can be made upon the specially benefited property until the work is finished. This dilemma is therefore presented: either no provision is made for the levy of a tax in time to provide a fund to meet at maturity the first installment due on the bonds already issued, or else a series of annual county and township general levies must be begun before any special assessment can be levied upon the peculiarly benefited lands. It cannot have been contemplated by the legislature that bonds should be issued on which a payment should be due before means could be provided to meet it. In the absence of an express provision on the subject it could readily be inferred that the intention was for a tax levy to be made in time to prevent a default. (*United States v. New Orleans*, 98 U. S. 381, 393; 4 Dillon on Municipal Corporations, 5th ed., § 1506.) The defendant has not shown that there is any way other than that pursued by the commissioners by which that result can be

avoided. In the oral argument it was suggested that warrants might be issued for the purpose; but the issuance of warrants, unless a fund existed against which they could properly be drawn, would not amount to a payment or better the situation, and there is no showing of the existence of such a fund.

The language of the statute to the effect that after the issuance of bonds the commissioners shall make an annual levy upon all the property of the county and of the townships, and upon the lands within the benefit district, would naturally seem to mean, in the absence of some specific reason to the contrary, that the levies of the general tax and of the special assessments were to begin at the same time. But to avoid the consequence pointed out—the opening of a way for the issuance of bonds without the power to provide for their payment —it may readily be interpreted as meaning that if any installment of principal or interest on the bonds matures before a special assessment can be made, a general tax sufficient for the purpose shall be levied. It will be noted that the limitation of the number of levies is not in terms made applicable to the general county and township taxes, the provision being that the petition for the road improvement shall designate "the number of annual assessments to be levied upon the lands in the benefit district . . . which shall be not less than ten nor more than twenty." The bonds, moreover, are required to be made "payable within the time fixed in the petition for levying *special assessments.*"

We conclude that it was proper for the commissioners to levy the taxes in question upon all the property of the county and townships, although for the present no local assessment can be made against the land specifically benefited.

It is suggested that this conclusion results in practical difficulty because the tax levied, being based on the estimate and not on the actual cost of the improvement, may overrun the amount needed. While the immediate occasion for levying a tax at this time is the need of providing a fund to meet the installment first maturing, the purpose of the tax is to pay a part of the debt incurred to make the improvement, the statutory requirement being that it shall be "sufficient" therefor, and any surplus can be carried over to the next installment without constituting a diversion. Although the obvious in-

tention is, that the amounts raised annually shall be approximately equal, there is no requirement of absolute equality, and minor differences can easily be adjusted from year to year.

The defendant interprets the statute as requiring that all the taxes it provides for shall be levied "according to the apportionment of cost," and argues that this cannot be arrived at until the completion of the work. The language from which he derives this meaning is to the effect that the commissioners "shall make an annual levy upon all the taxable property of the county and upon the taxable property of the townships and upon the lands within the benefit district according to the apportionment of cost fixed upon *said lands* in all cases in proportion to the respective liabilities." The italicized words of the quotation show that the requirement regarding apportionment has reference only to the special assessment upon the benefited property, for the general tax runs against personalty as well as real estate.

A final argument against the tax is based on the theory that its levy before the completion of the improvement would deprive the townships of the opportunity given them by the statute to avoid general township taxes, or reduce their amount, by depositing with the county board funds to pay, or to apply upon, its proportion of the cost. We do not see that such a consequence follows. It was not necessary for the officers of a township to know the precise amount for which it would ultimately be liable in order to make a cash deposit in lieu of the first year's levy, and that course, which was open to them, would have taken care of the situation for the time being.

The writ of mandamus asked for is allowed.